## BERESLAVSKY v. ESSO STANDARD OIL CO.
### No. 5832.

United States Court of Appeals Fourth Circuit.

Argued April 14, 1949.

Decided May 27, 1949.

W. B. Morton, Jr., New York City (Pennie, Edmonds, Morton & Barrows, W. Brown Morton, New York City, and R. Contee Rose, Baltimore, Md., on brief), for appellant.

Theodore S. Kenyon, New York City, and William L. Marbury, Baltimore, Md. (Marbury, Miller & Evans, Baltimore, Md., and Malvin R. Mandelbaum, New York City, on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a patent infringement suit. Plaintiff is the owner of a patent, now expired, on a motor fuel described in the claims as "containing a compound belonging to the mesitylene group". Defendant is the Esso Standard Oil Company, which manufactured and delivered motor fuel containing such a compound pursuant to a contract with the Defense Supplies Corporation, a corporation which was

wholly owned by the United States through ownership of its stock by the Reconstruction Finance Corporation, and which acted as an agency of the government in procuring supplies for the armed forces of the country during the Second World War. On defendant's motion for summary judgment, an order was entered that the complaint be dismissed in so far as it related to motor fuel sold by defendant to the Defense Supplies Corporation, or to any other agency of the United States; and a stipulation of parties was entered that, without prejudice to the right to appeal, the remainder of the cause of action covered by the complaint be dismissed. Final judgment was then entered dismissing the complaint, and plaintiff has appealed. The only question presented by the appeal is whether or not plaintiff's sole remedy with respect to the motor fuel purchased by the Defense Supplies Corporation or other agencies of the United States is suit against the United States in the Court of Claims under the Act of July 1, 1918, 35 U.S.C.A. § 68 [now 28 U.S.C.A. § 1498], the pertinent portion of which provides:

"Whenever an invention described in and covered by a patent of the United States shall be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

The facts are that, on January 13, 1942, the defendant entered into a contract with Defense Supplies Corporation obligating itself to use its best efforts to complete new facilities and to deliver to Defense Supplies Corporation all of its output of 100 octane or aviation gasoline during the first year and its "pro rata share of the entire requirements of the United States Government" during the remaining term of the contract. The Petroleum Administration for War, another agency of the government, whose duty it was to coordinate the efforts of manufacturers of petroleum products in the interest of national defense and to provide contact between governmental agencies and the various branches of the petroleum industry, directed defendant to maintain maximum production of aviation gasoline. While the contract between defendant and Defense Supplies Corporation defined the gasoline to be furnished in terms of performance and not of chemical content, the hydrocarbon known as mesitylene could not have been excluded from it without materially reducing production; and the Petroleum Administration for War authorized, recommended and encouraged the production of gasoline with such content to be supplied for government use under the contract. There can be no question but that the 100 octane gasoline here involved was manufactured for the government under government direction, was sold to the government, and was used by the government. It is admitted that the responsible officers of the government knew that it contained the hydrocarbon elements which are said by plaintiff to infringe his patent.

The case as thus presented falls squarely within the language of the statute quoted above. The patent is not for a machine, which a contractor has used for his own purposes, as in Wood v. Atlantic Gulf & Pacific Co., D. C., 296 F. 718, nor is it one for a process which a contractor could use or not as he might see fit; but it covers a product which was not only "used by" but was also "manufactured for" the United States. It was to just such cases that the statute, which was passed in 1918 as an amendment to the Act of 1910, was intended to apply. The Supreme Court had held that the Act of 1910 did not protect a government contractor from liability for infringement, Cramp & Sons Ship & Engine Bldg. Co. v. International Curtis Marine Turbine Co., 246 U.S. 28, 42, 38 S.Ct. 271, 62 L.Ed. 560; and, as a result of that decision, contractors were hesitant to enter into broad procurement contracts for the government, with the possibility of being sued for patent infringement, and wartime procurement was being hindered. The Navy Department thereupon requested that the Act of 1910 be broadened so as to protect government contractors against such suits. The history of the amendment is fully set forth in Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 342-345,

150

48 S.Ct. 194, 197, 72 L.Ed. 303, where the court, speaking through Chief Justice Taft, said:

"The purpose of the amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word 'entire' emphasizes the exclusive and comprehensive character of the remedy provided. As the Solicitor General says in his brief with respect to the act, it is more than a waiver of immunity and effects an assumption of liability by the government. * * * The intention and purpose of Congress in the act of 1918 was to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents. The letter of the Assistant Secretary of the Navy, upon which the act of 1918 was passed, leaves no doubt that this was the occasion for it. To accomplish this governmental purpose, Congress exercised the power to take away the right of the owner of the patent to recover from the contractor for infringements."

See also Western Electric Co. v. Hammond, 1 Cir., 135 F.2d 283; Pollen v. Ford Instrument Co., Inc., 2 Cir., 108 F.2d 762; Broome et al. v. Hardie-Tynes Mfg. Co., 5 Cir., 92 F.2d 886; Hazeltine Corp. v. General Electric Co., D. C., 19 F.Supp. 898.

■ Plaintiff argues that, since the contract did not expressly require the supplying of an infringing product, the case should be treated just as though the contractor for his own benefit had used an infringing process or an infringing machine as in Wood v. Atlantic Gulf & Pacific Co. supra. The answer to this is two-fold. In the first place, although the written contract did not provide in express terms for delivery of a product which would infringe the patent, it did require maximum production, which necessarily resulted in a prod-uct containing the infringing ingredients; and this was known to and encouraged by officials of the government having responsibility in the premises. In the second place, there is no language in the statute which limits its application to cases where the government contracts expressly for what will infringe, but, on the contrary, it applies in any case where the invention of the patent is "used or manufactured by or for the United States". To limit the application of the statute to cases where officers of the government intentionally contract for patent infringement would in very large measure defeat its purpose.

We find nothing in the Act of October 31, 1942, 35 U.S.C.A. § 94, to support plaintiff's position. That act provides:

"For the purposes of section 68 of this title, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States."

It will be noted that this statute deals, not with use of a patent by the government, but with use by a contractor, subcontractor or other person for the government. In such case the use to come within the terms of the statute must be "with the authorization or consent of the government". Here the product of the patent was used by the government itself; and there would consequently seem to be no ground for the application of the statute, the purpose of which was to remove doubt as to whether the Act of 1918 applied to subcontractors. See Senate Report No. 1640, 77th Congress 2d Session pp. 22, 46. The matter was dealt with in an opinion of the Judge Advocate General of the Army of February 8, 1943, (Bulletin of the Judge Advocate General, vol II, pp. 75-76), where he said:

"A review of the history of this section, both before and during its pendency before the Congress, discloses that its sole and only purpose was to broaden the scope of the act of June 25, 1910, as amended, so to to remove any further doubt that subcontractors and other suppliers of goods and

materials to the government were included within the terms of that act to the same extent as prime contractors to the Government were; a construction previously admitted to be true by all parties concerned. Nothing in the wording of the section itself, or in its legislative history, contemplated any limitation on the scope of the act of June 25, 1910, as amended, or indicated the attachment of any conditions where were not existent before its passage.

\* \* \* \* \* \*

" 'Authorization or consent' on the part of the Government may be given in many ways other than by letter or other direct form of communication. \* \* \* the specifications and the contract may be silent with respect to the use of patented inventions. In such event, *if the invention for which claim is made is incorporated in the articles delivered to the United States under the terms of the contract, the acceptance of such articles as complying with the terms of the contract, constitutes 'consent' by the Government* sufficient to bring the articles within the provisions of the Act of June 25, 1910, as amended, supra, and forms the basis for the transfer of jurisdiction over any claim for compensation therefor from the District Court to the Court of Claims, \* \* \*." (Italics supplied).

 Plaintiff next contends that the statute has no application to a purchase by the Defense Supplies Corporation, which it is argued is not a purchase by the United States. This contention seems little short of frivolous in view of the fact that the Defense Supplies Corporation was a mere purchasing agency for the government and that the gasoline here involved was in fact manufactured for and used by the armed forces of the country or by other government agencies to which it was allotted. See Southern Pac. Co. v Reconstruction Finance Corporation, 9 Cir., 161 F.2d 56. But, even if this contention were sustained, plaintiff would not be helped, since, even though defendant were a subcontractor and the Defense Supplies Corporation the contractor in the dealings with the United States, the statute would apply because the gasoline was unquestionably manufactured for and used by the United States. If authorization and consent of the United States to the inclusion of the infringing ingredients were necessary, which we do not hold, there can be no question but that these were given.

There was no error and the judgment appealed from will be affirmed.

Affirmed.